THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ORRIN FRIDY, Appellant, Indicted with JOHN BRUCE and JUDSON FRIDY.

*Trial and conviction of a prisoner of burglary — false testimony of a witness affords ground for a new trial — a judgment of conviction reversed because of the admission of testimony as to how defendant "looked."*

Upon the trial of a prisoner under an indictment a witness jointly indicted with the prisoner testified that the prisoner was guilty and that he, the witness, had nothing to do with the crime.  The prisoner was found guilty and the next day such witness pleaded guilty under such indictment.

*Held,* that as it was by no means certain that the prisoner would have been convicted without the testimony of such witness, the prisoner was entitled to a new trial.

Upon the trial of a father under an indictment for the stealing of chickens, testimony introduced by the prosecution that a son of the prisoner who had been jointly indicted with his father for the same offense "looked like a boy that had come out of a hen roost," and that he "looked sneaking," is inadmissible in evidence, and if it be properly objected to, and an exception be taken to the ruling of the court admitting the same in evidence, the reception thereof forms a good ground for the reversal, upon appeal, of a judgment of conviction.

APPEAL by the defendant, Orrin Fridy, from a judgment of the Court of Sessions held in and for the county of Dutchess, rendered on the 8th day of August, 1894, upon the verdict of a jury convicting him of the crime of burglary in the third degree, and also from an order entered in said clerk's office on the 8th day of August, 1894, denying the defendant's motion for a new trial on the ground of newly-discovered evidence and upon all the grounds stated in section 465 of the Code of Criminal Procedure.

*A. M. & G. Card,* for the appellant.

*Horace D. Hufcut, District Attorney,* for the People, respondent.

DYKMAN, J.:

These three men were indicted by the grand jury of Dutchess county for burglary in the third degree.

The specific allegation in the indictment was that on the 2d day of January, 1894, they feloniously broke open the hen house of John W. Free with intent to steal his goods and chattels, and did

steal and carry away eighty barnyard fowls of the value of fifty dollars.

Orrin Fridy was tried separately on the 6th day of August, 1894, and was convicted and sentenced to the State prison for two years.

Upon his trial, John Bruce was called as a witness by the People, and testified that Fridy came to his house in the morning of January third about four-thirty o'clock with a load of bags containing chickens, and that he, Bruce, had nothing to do with the stealing of the chickens.

The next morning Bruce withdrew the plea of not guilty which he had previously interposed to the indictment, and pleaded guilty thereto.

Bruce requested the court to suspend sentence upon them because he had testified against Fridy upon his trial and aided in convicting him. To that request the court replied : " That he should consider it; that he could not see how a man could swear one day that Fridy was the guilty party, and after Fridy was convicted that he should then plead guilty, and look for any sympathy from the court." The court did, however, reserve the sentence upon Bruce.

Thereupon, Fridy and his lawyer made affidavits reciting the foregoing facts, and his counsel made a motion to the court for a new trial thereon. The motion was denied, and the defendant has appealed from the judgment of conviction and from the order denying the motion for a new trial. It will be convenient to consider first the appeal from the order.

It is by no means certain that the defendant would have been convicted without the testimony of Bruce. If the case had been sent to the jury destitute of that evidence it would have been quite weak and doubtful. Starting with the conceded guilt of Bruce, the circumstances might have received an explanation consistent with the innocence of Fridy.

The chickens were found in the house where Bruce resided, although it belonged to Fridy, and he had the use of a room or two in the house. That fact, therefore, weighs as heavily against Bruce as it does against Fridy.

The fact that there were feathers in the top of the boot of the defendant on the day of his arrest, is entitled to only

slight consideration, especially as it does not appear what kind of feathers they were, further than that there was one large feather. There were feathers in the room where the chickens were found, and the defendant was there. These feathers may have adhered to his boots there. Moreover, there were feathers in the court room where the feathers adhered to his boot. There was a square box wagon at Bruce's place with blood on the axle and running gear, and the defendant had such a wagon. It is fair to assume that the chickens were brought to the house in that wagon, but that assumption does not aid us, as our inquiry relates to the person who did the business.

So the least that can be said in favor of the defendant is that without the testimony of Bruce the case made against the defendant would have been doubtful. He had a property right in the doubt, and he has been deprived thereof. The case went to the jury with the testimony of Bruce that he was innocent, but with his guilt established the case presents a very different aspect.

The testimony and the surrounding circumstances point much more directly to Bruce than they do to Fridy.

As the defendant must be allowed the benefit of doubts in all stages of his case, and as we conclude there will be a doubt about his guilt with the conceded guilt of Bruce, we think he should be allowed an opportunity to present his case to the jury upon the facts as they exist, unclouded by the false testimony of Bruce.

In view of our conclusion to grant a new trial upon the motion of the defendant, it is not necessary to make an extended examination of the appeal from the judgment. The evidence as it stood with the testimony of Bruce, was sufficient to support the verdict, but the record discloses this occurrence upon the trial: Jacob Osterhout was a witness for the prosecution, and in his direct examination, in speaking of an interview he had on the third day of January, the day after the larceny, with Judson Fridy, the son of the defendant, who was indicted with his father, the witness said, " He looked like a boy that had come out of a hen roost. Q. What do you mean by that ? A. He looked sneaking, if you know how that is.

" Defendant moves to strike out his answer about looking sneaking. Motion denied. Exception."

The first exclamation seems to have been voluntary, and the respon-

sibility for it rested only upon the witness, and if promptly stricken from the record it might have been harmless, but when the public prosecutor elicited an explanation or further opinion it was a little less than an outrage upon the rights of a man undergoing a criminal prosecution.

It is impossible to suppose the remark harmless, for it was palpably harmful. The jury may well have assumed it to be legitimate proof, and the description would present a hideous picture to the mind of any jury.

We think the exception presents an error which is fatal to the conviction.

The judgment of conviction and the order denying the motion for a new trial should be reversed, and a new trial granted.

BROWN, P. J., and CULLEN, J., concurred in result.

Judgment and order reversed, and new trial granted.